```
     E5n9pers                    Sentence

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              13 CR 30 (JSR)

 5   JUAN PERALTA,

 6              Defendant.

 7   ------------------------------x
                                                New York, N.Y.
 8                                              May 23, 2014
                                                2:26 p.m.
 9

10
     Before:
11
                         HON. JED S. RAKOFF
12
                                                District Judge
13

14                         APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     AMIE N. ELY
17   EMIL BOVE
          Assistant United States Attorneys
18
     LAW OFFICE OF ADAM D. PERLMUTTER P.C.
19        Attorneys for Defendant
     ADAM D. PERLMUTTER
20   DANIEL McGUINNESS

21   ALSO PRESENT:  NICHOLAS LUTTINGER, Spanish Interpreter

22

23

24

25
```

1              (In open court; case called)
2              MS. ELY:  Good afternoon your Honor Amie Ely and Emil
3     Bove for the government.
4              THE COURT:  Good afternoon.
5              MR. PERLMUTTER:  Good afternoon.  For defendant Juan
6     Peralta, I'm Adam Perlmutter; my associate, Daniel McGuinness;
7     and my client to my right.
8              THE COURT:  All right.  We're here for sentencing but
9     there are many questions that have to be reached before the
10    Court can even begin to arrive at a determination.
11             Under the law of the United States as interpreted by
12    the Supreme Court and the Second Circuit the Court is
13    ordinarily required to first calculate the sentencing guideline
14    range.
15             This Court is on record as indicating its view that
16    the sentencing guidelines, aside from their innumerable
17    material flaws, irrationalities and absurdities, are in many
18    cases of only the most modest use, if at all, in determining an
19    appropriate sentence.  And in this particular case where the
20    defense and the government radically disagree on how the
21    guidelines should be interpreted in ways that would make a very
22    material difference as to the guideline range, the Court's
23    views of the worthlessness of calculating the guideline range
24    would be reinforced.  However, I don't make the law.  And my
25    betters on the Supreme Court and the Second Circuit have

1    instructed me to calculate the guideline range.

2            What makes it all the more a waste of time in this
3    Court's view is that the difference between the government's
4    view and the defendant's view, the probation office having
5    agreed with the defendant, is one that relates to technical
6    issues about guideline interpretation, having almost nothing to
7    do with the underlying facts of the case.  From a purely
8    technical standpoint, there's some pretty interesting
9    questions, roughly equivalent to the medieval philosophers'
10   debates over how much angels could dance on the head of a pin
11   and having similar practical importance; that is to say, none.

12           But that's problem number one.  Problem number two,
13   and to my mind a far more important problem, is that it does
14   not appear that the parties agree on a whole host of material
15   facts.  And while that disagreement was irrelevant when it came
16   to entry of a guilty plea, the disagreement is highly relevant
17   to determining the appropriate sentence.

18           Long before the guidelines came into existence a
19   gentleman by the name of Benjamin Cardozo who was, among other
20   accomplishments, probably among the two or three greatest
21   judges of the 20th century, said, "The facts drive the law."
22   And this is a good example.  If I knew what the facts were, I
23   would know how best to resolve the differences among the
24   parties as to the guideline range but, much more importantly, I
25   would know what sentence to impose.

1           If the government is correct about the facts, there is
2    no way I would adopt the probation recommendation of time
3    served.  If the defense is right about the facts, that
4    recommendation would be considerably more colorable.  And these
5    facts relate not only to the offense in question but to the
6    defendant's activity both before and after the offense, even to
7    questions like what are conditions at the MCC.  For example,
8    taking that last one as an example, the defense argues that
9    because the defendant has served or been detained for something
10   like 13-and-a-half months in the local federal jails, he should
11   receive -- there should be a downward adjustment to take
12   account of the "harsh conditions therein."  Well I don't know
13   whether their conditions there are harsh or not, but we could
14   find out.  We would have to hold a hearing, an evidentiary
15   hearing.
16           So, let me make sure that I do understand at least
17   some of the areas where there is disagreement.  The government
18   asserts, for example, that the defendant had previously worked
19   as a debt collector for a drug trafficker.  If that's true, of
20   course it casts a whole different light on how much he
21   understood of what, for example, both he was saying and what
22   Encarnacion was saying and what was going on, etc.  But, I
23   don't understand the defense to be agreeing with that
24   accusation.  But let me find out.
25           Are you agreeing or disagreeing with that accusation?

1        MR. PERLMUTTER:  No, your Honor.  We are obviously
2   disagreeing with it.  My understanding is that it comes from
3   cooperating witnesses -- my understanding is that it comes from
4   a cooperating witness working with the government.  I don't
5   know if it's more than one, but I understand it's one.
6        THE COURT:  Now let me ask the government counsel if
7   one were to hold a Fatico hearing are you prepared to present
8   evidence to that effect?
9        MS. ELY:  Your Honor, could we have a moment?
10       THE COURT:  Yes.
11       (Pause)
12       MS. ELY:  Your Honor, our proof would include both
13  what cooperating witnesses would say about statements that
14  Peralta made to them and statements that Peralta made to
15  agents.  He's actually spoken with agents in the past,
16  including October 21, 2011, during which he said that he had
17  been involved in home invasions.  And he engaged in a proffer
18  session with the government in December of 2011 during which he
19  made other admissions that we believe defense counsel's denial
20  of this aspect of the government's proof has now opened.
21       THE COURT:  Well, I don't know that he's opened
22  anything necessarily in a binding way.  He was just responding
23  to my question of whether he admitted or denied this particular
24  allegation.
25       But what you're saying is that if there were a Fatico

1    hearing you would be prepared to adduce testimony both from his
2    proffer session and from a cooperator.
3            MS. ELY:  Yes, your Honor.  The cooperator is not
4    housed in the New York City area so we would -- it would
5    require some advance notice.
6            THE COURT:  I'm not talking about this afternoon,
7    obviously.
8            So, I'll just stop there.  I have a whole laundry list
9    of these things that I was going to go through but that one, I
10   just picked that one because it does totally color the way I
11   would interpret what went on here.
12           The government's view in essence was that in this role
13   of an impersonator, which was the offense to which he pled, he
14   undertook -- either individually or with the help of or in
15   league with Encarnacion -- a long series of threatening
16   activities that were designed to place the person to whom --
17   persons to whom those statements were made in very severe fear.
18           I might add for the record I received earlier today a
19   victim impact statement from one of the victims.
20           On the other hand, if that allegation is not true or
21   is substantially exaggerated, then the activities that
22   Mr. Peralta undertook are diminished, particularly with respect
23   to his knowledge and intent which are key elements in the
24   Court's determination of the appropriate sentence.
25           So, I thought about the classic sort of Solomonic

approach here of saying well giving some weight to the government's allegations but not taking them at a full face value in all respects and, forgetting about the very difficult but interesting guideline calculation issue, I could impose a sentence here of say two years.  And then when I thought about that, I thought no, that's a total derogation of my duty.  If this guy's as bad as the government says he is, that's too minimal of a sentencing.  If he is as hopeful and peripheral as the defense alleges, then it might be too harsh a sentence.  I don't think I should just speculate and, on that basis, give a compromise.  So all of this is by way of saying that -- and we've already reached a similar conclusion in Encarnacion.  I was hoping to avoid it here but I don't know that I can.  We need to have a Fatico hearing.

Now, let me ask two other questions.  First, is the government contesting the notion that the MCC or MDC are harsh in a way that would permit a reduction in sentence for which the standard is considerably high, or are you simply taking the position that even in taking every allegation that's made about that on its face, for the purpose of argument, you still don't think it warrants under the law a reduction?  Of course the law here has two aspects.  There's guideline aspect but there's also the aspect of what this Court in its discretion feels the impact is on the broader 3553(a) factors.

MS. ELY:  Your Honor, one moment?

1            THE COURT:  Yes.

2            (Pause)

3            MS. ELY:  Your Honor, as an initial matter we don't

4    believe that the defendant has shown, even if you take at face

5    value his allegations, that he's entitled to such reduction.

6            As to whether the government would be prepared to

7    prove up what the circumstances of the general conditions of

8    confinement are at the MCC and MDC we would like an opportunity

9    to check with our office to find out if that's something --

10           THE COURT:  I can well understand that.  I don't

11   imagine that would take us though more than three or four

12   weeks.

13           Now, it occurred to me -- we already have a

14   evidentiary hearing set.  Would the witnesses on the points

15   raised in the parties' papers here, would the government's

16   witnesses be essentially the same people?

17           MS. ELY:  In many respects, your Honor.

18           What we would propose, and we would need to obviously

19   talk with Mr. Cohen, who is represented by his students today

20   but not present himself.

21           THE COURT:  Wait a minute.  Only two students, three

22   students?  It's really a small fraction of the normal

23   contingent.

24           MR. PERLMUTTER:  Judge on behalf of Mr. Cohen we don't

25   take umbrage by the showing today.

1            MS. ELY:  Here's what we would propose, that we go

2     forward on Tuesday with Dr. Goldstein's testimony and also with

3     the testimony of Mr. Encarnacion's ex-wife.  Because we don't

4     believe that those aspects of that hearing, as planned,

5     implicate Mr. Peralta's interests.

6            We would like to, however, put off the rest of the

7     Fatico hearing because we think that it would be inefficient

8     and also unduly burdensome to these victim witnesses to have to

9     testify twice in this matter.

10           THE COURT:  It's Wednesday is what my --

11           MS. ELY:  It is Wednesday.

12           THE COURT:  I assume you're talking the holiday off,

13    not that the court will, of course.

14           So, that's fine with me if it's fine with not only

15    present counsel but also Mr. Cohen as well.  And obviously we

16    can't put it off long but we have to put it off long enough for

17    defense counsel in this case to be able to prepare adequately.

18           Do you have a ballpark date in mind?

19           MR. PERLMUTTER:  Judge, can I just ask a quick

20    question so that we can frame the issues.  You've raised this

21    one issue about debt collection saying that that would

22    certainly --

23           THE COURT:  Let me give you an idea of some other

24    issues.

25           MR. PERLMUTTER:  I think that that might help us.

THE COURT: This is without prejudice to the hearing considering other issues that the parties have indicated by their submissions they are in disagreement with.

There's the question of whether Mr. Peralta knew that Mr. Encarnacion had used Facebook messages to threaten victim one's family.

There's the question of whether Mr. Peralta accompanied Encarnacion to victim one's mother's house in Brooklyn and heard Encarnacion tell her, if he did, that her son would not be safe unless he paid Encarnacion the money that the son allegedly owed.

There was a period, I believe the government says it's about six weeks, in which Mr. Peralta allegedly engaged in multiple telephone calls with victim one during which he allegedly threatened the safety of victim one and victim one's family.

Within that, there is a question of whether he intended and gave a threatening meaning, or intended to give a threatening meaning to some statements that otherwise might be viewed as ambiguous.

So, I will give one example. The government cites where he says, "We're not kids. I hope that God willing you will be able to solve it because we're ready for war. I don't want your family having to do with this."

Now if you take that statement on its face literally,

E5n9pers                          Sentence

1   it has one meaning.  If you take it as an implied threat, an
2   intentionally implied threat, it has another meaning; so,
3   that's the kind of thing.
4           MR. PERLMUTTER:  My only question about that point,
5   Judge, is that my understanding of the law is that the intent
6   of the speaker is not what controls.  It's the subjective
7   impression of the listener as to whether they feel threatened
8   by it.
9           THE COURT:  I think that for sentencing purposes it's
10  just the other way around.
11          MR. PERLMUTTER:  You're right.  I'm thinking in terms
12  of the charge.
13          THE COURT:  But for sentencing purposes what the court
14  is looking at is was this a bad guy who set out to threaten
15  people or was he just someone who is along for the ride and
16  helping a little bit but not really cognizant of just what was
17  being conveyed.
18          MR. PERLMUTTER:  Sure, I understand, Judge.  Thank
19  you.
20          THE COURT:  There's also the suggestion, although I
21  must say I don't think this one is as important as some of the
22  other ones I've mentioned, that during some of these calls
23  Peralta also tried to recruit victim one to transport narcotics
24  for Peralta after the money would have been repaid.
25          There is also the allegation that even after these

1  events were in effect concluded because of Encarnacion's

2  arrest, Peralta continued selling and using marijuana.

3              I think those are the main ones, including the ones I

4  mentioned earlier.

5              Now that's all separate from the MDC/MCC issue which

6  is obviously in dispute as well.

7              MR. PERLMUTTER:  I'm sorry.  The last thing you said?

8              THE COURT:  Which is also in dispute as well.

9              MR. PERLMUTTER:  Well I guess that from where we sit

10  we're going to need an answer as to that last issue from the

11  government about how they wish to proceed.  We'll obviously do

12  whatever the Court --

13              THE COURT:  Let us put aside the MCC/MDC part for a

14  minute.  Because if there is going to be a hearing on that, it

15  probably should be a separate hearing and it may not -- I

16  exaggerated when I said two or three weeks but it would

17  probably be several days.

18              MR. PERLMUTTER:  I would imagine we would have to

19  consult with experts.

20              THE COURT:  So let's put that aside for the moment.

21              So just assuming we're on the other issues that I've

22  just gone over, how long do you want to prepare for such an

23  evidentiary hearing?

24              MR. PERLMUTTER:  I guess in order to understand, to

25  give you that answer, I would need to know how many witnesses

1  we're talking about from the government.  They've obviously
2  said that they would be relying in part on the proffer
3  statement.  So that would be the case agent, the statements
4  themselves.  I'm aware of one other cooperator.  I don't know
5  how many more cooperators they would want to bring in to try to
6  make out these issues.  Also, I think we also have the victim's
7  mother testify.
8              THE COURT:  Without committing the government to an
9  exact figure, do you want to give me ballpark?
10             MS. ELY:  Your Honor, one moment?
11             THE COURT:  Yes.
12             (Pause)
13             MS. ELY:  Your Honor, we would estimate that we would
14  put on the victim, the victim's mother.  The case agent will be
15  the same person as who will be testifying about the statements
16  made by Edgar Encarnacion.  So that would be not an additional
17  witness but obviously additional proof.  Likely one or two
18  cooperating witnesses, though we'll be able to streamline that
19  somewhat.  We'll also talk with defense counsel about whether
20  it's possible to streamline somewhat Giglio for one of those
21  cooperating witnesses.  I would note that one of the
22  cooperating witnesses has testified at two trials.  That there
23  are ways for his testimony to be rather short.  It's also
24  possible that he is a lengthy witness.  There also may be a few
25  other calls that we would want to put in, including but not

1  limited to prison calls where the defendant admits that he was
2  the person on --
3           THE INTERPRETER:  I'm sorry.
4           MS. ELY:  Including but not limited to prison calls
5  and the like.  So we would need to look into that a little bit
6  further and we can give the Court and defense counsel a
7  slightly better idea.
8           THE COURT:  That's fine.  That's the kind of ballpark
9  that I wanted.  So let's go back to defense counsel.
10          MR. PERLMUTTER:  Well I guess the question is how soon
11 we could get 3500 material to start preparing.
12          THE COURT:  I'm sure that can be done quite
13 expeditiously.  We'll set a date for that after -- before the
14 afternoon is over.
15          MR. PERLMUTTER:  Sure.  And then the next question is
16 how quickly -- I would think that we would probably need about
17 two -- (pause) about two or three weeks to get prepped up,
18 Judge.
19          I'm assuming you're on a short timeframe as well.
20          THE COURT:  Yes.  You assume that correctly.
21          MR. PERLMUTTER:  I'm not saying that by reputation I'm
22 saying that because of the time served recommendation.
23          THE COURT:  It is in your client's -- given his very
24 own allegations he doesn't want to be in the MCC/MDC any longer
25 than he has to be, I, therefore, want to give him the speediest

1  hearing that would be available given the needs of his counsel
2  to prepare.
3             MR. PERLMUTTER:  Understood, Judge.
4             THE COURT:  So, let's say if we're talking about two
5  to three weeks, let's see what we have available.
6             I think the 9th or 10th of June.  The 9th would
7  be better I'm being told.
8             MS. ELY:  Your Honor, would it be possible to do the
9  10th and a different day as well.  I've got long-scheduled
10 grand jury time with lay witnesses on the 9th.
11            THE COURT:  We can move things around so we can do the
12 10th.
13            MR. PERLMUTTER:  The 10th, Judge?
14            THE COURT:  Yes.  Does that work for you?
15            MR. PERLMUTTER:  That's good.
16            MS. ELY:  Should we also book a second day just in
17 case the cooperating witness ends up being the long version
18 rather than the short version?
19            THE COURT:  This, of course, we have to hear from
20 Mr. Cohen as well.  Although since his counsel are here, if he
21 doesn't like for I'm sure legitimate reasons any of the dates
22 we work out, then we'll just go forward with the earlier, much
23 earlier dates that we already have and we'll just have to have
24 the same witnesses testify twice.  But he might find it more
25 helpful to his own situation to have it later than sooner,

E5n9pers                        Sentence

1    though I'm sure he will be fully prepared under any
2    circumstances.
3            So, hold on just a minute.
4            MR. PERLMUTTER:  Your Honor, would you maybe want --
5    we could set two dates now and maybe do a phone conference with
6    Mr. Cohen make sure that we have dates locked in that work for
7    everybody.
8            THE COURT:  Let me tell you what dates are not
9    available to me.  In a moment of --
10           MR. PERLMUTTER:  Weakness.
11           THE COURT:  I was -- I couldn't decide whether I
12   preferred the word weakness or stupidity, I agreed to try a
13   civil case in Ocala, Florida, in the height of the rainy season
14   in Ocala, beginning June 16, is it?
15           THE DEPUTY CLERK:  Yes.
16           MR. PERLMUTTER:  I'm sorry to say that my wife is from
17   near Ocala.  So I'm going to have to go with the latter
18   suggestion.  I apologize.
19           THE COURT:  Anyway, that's going to take as much as
20   two weeks.  I hope it will take less but I have to block out
21   two weeks.
22           MR. PERLMUTTER:  If it's two weeks I'm going to stand
23   firm on the latter suggestion then, Judge.
24           THE COURT:  What this means is I really want to do it
25   before June 16.

|     |                                                                              |
| --- | ---------------------------------------------------------------------------- |
| 1   | The other dates that are not available.  June 11, 12,                       |
| 2   | and 13 are the Second Circuit judicial conference.  I don't                 |
| 3   | think it would be an act of stupidity for me to miss some of                |
| 4   | that but nevertheless all things being equal I would prefer not             |
| 5   | to do it on those dates.  And the 5th and the 6th of June         |
| 6   | are also not available because I have to celebrate my 50th                  |
| 7   | college reunion which I would also gladly avoid except I'm the              |
| 8   | chair of their reunion so probably I should show up.  So you                |
| 9   | can see why we're focusing on the 9th and 10th.                   |
| 10  | MR. PERLMUTTER:  That's fine but I guess counsel's got                      |
| 11  | a problem with the 9th.                                                |
| 12  | MS. ELY:  I'll see if I can move things around, be                          |
| 13  | available at least part of the time of the 9th.  Our concern           |
| 14  | is depending on how long that cooperating witness, would be                 |
| 15  | longer than a day.                                                          |
| 16  | THE COURT:  So let's have a conference call on Tuesday                      |
| 17  | and we will tentatively plan on the 9th and 10th.  But            |
| 18  | government counsel can try to check out things at their end.                |
| 19  | And Mr. Cohen, this will be a three-way conference with                     |
| 20  | Mr. Cohen, yourself, and the government counsel.  And if -- but             |
| 21  | I think realistically, just so everyone's aware, the                        |
| 22  | alternative, it sounds like -- which I'd be very reluctant to               |
| 23  | do -- is early July.  As near as I can tell, I have nothing                 |
| 24  | scheduled for July 4 so that day is fully available to the                  |
| 25  | Court anyway, for now.                                                      |

|     |     |
| --- | --- |
| 1 | MR. PERLMUTTER:  Nothing better to do on July 4 than |
| 2 | have a hearing. |
| 3 | THE COURT:  I figure with you guys here there would be |
| 4 | enough fireworks to keep me entertained. |
| 5 | MR. PERLMUTTER:  Judge, we're at your disposal.  I |
| 6 | know you're very busy.  Our summer is lightening up.  And as |
| 7 | another great jurist of the 20th century, Justice Brandeis, |
| 8 | said, "Take care of today's cases today and tomorrow's cases |
| 9 | will take care of themselves."  So with that said, I expect |
| 10 | that if we have to do it tomorrow -- into July, we can get the |
| 11 | availability and will be there for your Honor. |
| 12 | THE COURT:  I appreciate it.  And once again Justice |
| 13 | Brandeis has proven himself a very wise man second only, of |
| 14 | course, to Benjamin Cardozo of course. |
| 15 | Anything else you want us to take up? |
| 16 | MR. PERLMUTTER:  What time do you want us to |
| 17 | conference on Tuesday? |
| 18 | THE COURT:  That's a good point. |
| 19 | How about noon? |
| 20 | MR. PERLMUTTER:  That's fine, Judge.  We'll do a phone |
| 21 | conference with -- |
| 22 | THE COURT:  Well I'm only leaving it to one of you, |
| 23 | including you, to set up that call.  So just figure out how you |
| 24 | want to do the phone logistics and then just call in at noon. |
| 25 | MR. PERLMUTTER:  That's very good. |

E5n9pers                    Sentence

1             THE COURT:  And I'll get on the phone with you.
2             MR. PERLMUTTER:  Thank you, your Honor.
3             THE COURT:  Thank you.  So this matter is adjourned.
4             (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25